Robert D. McClary 2-21-0534 Robert D. McClary 2-21-0534 Robert D. McClary 2-21-0534 Thank you. Good morning, justices and counsel. I'm George Acosta on behalf of the plaintiff appellant, Mr. Brendan McCain. May it please the court. This appeal seeks reversal of the trial court summary judgment orders in favor of each defendant based on the trial court's erroneous finding that neither defendant or the plaintiff any legal duty of care and that the spoliation evidence count against defendant BAM was thus mooted. For the following reasons, the summary judgment orders of the trial court should be reversed. Summary judgment is an extreme disposition and this court's review of the rulings here is de novo. Under that standard and when viewing the facts in the light most favorable to my client, the plaintiff, if this court finds that any legal duty of care arises from this record, the trial court summary judgment orders must respectfully be reversed. As you know, Mr. McCabe was severely injured when a ladder that he was standing on at some 18 to 20 feet in height suddenly slipped out from underneath him, shattering his heels and requiring several surgeries to try to reconstruct the joint. I'm honored to represent Brendan McCabe in this matter. Brendan is simply seeking his day in court and we believe that this record strongly entitles him to that privilege. From the outset of this argument, I want to plainly state the precise bases for reversal of the trial court summary judgment rulings. First, the primary grounds that the trial court used to find that there was no duty was to hold up an archaic and abandoned standard called the lucrative bailer standard. This dates back to cases in the mid-1900s where the Baylor-Bailey law was used to describe when someone supplied a chattel to somebody else, whether it was for storage or for use. The restatement clearly has pulled the common law descriptions of that duty away from the supplier. From the outset, I want to say that the Brooks v. Essex holding that the trial court clung to and relied upon is really not good law anymore. The basis for saying that is the holding in Pagano v. Occidental, which Justice Hoffman authored back in I believe 1994. And clearly explained, analyzed, and did away with that archaic standard. Mr. Costa, if I could ask you a question just to sort of clarify something I've been wondering about. You seem to be taking the position that BAM owed a duty of care pursuant to section 408 of the restatement, which is the section that deals with leasing channels, correct? Well, it does deal with leasing. It deals with providing or supplying a chattel. You know, leasing technically just means providing it to somebody else. Well, wouldn't section 405 be more applicable of lending? Wasn't the chattel lent here? What evidence is there of some kind of a lease arrangement? Well, Judge, by leasing, if you mean whether there was an economic transaction or not, I agree with you, there was not an economic transaction. And I will also agree with you, and as we addressed in our reply brief, that section 405 could aptly apply to this as well. We are not introducing any kind of new cause of action by saying that section 405 could apply to. All of these sections are contained within the same chapter of the restatement that deal with the supplying of a chattel to another person. So we're not coming in and this is a premises liability case now. We're not doing that. But as the section in the chapter... Do you agree it's the same liability, whether it's leased or whether it's lent? Essentially, both of these sections apply and create a duty, and there is no requirement in either of them for a financial transaction to have taken place. Neither of them have any language that say it has to be lucrative, it has to include a financial transaction. So to answer your question, no, there is no need under either of them to include that. So getting back to the basis, I'm going to start with CrossFit. CrossFit's common law duties of care are aptly or best and that's a Supreme Court case. Union Pacific Railway was a defendant. They very carefully deconstructed the comments and the requirements of section 414. And in comment A, they note that when a master-servant type of relationship is present, as we submit was present here, then it's really not a section 414 retained control duty, but it's rather a duty that arises under agency law. We submit to this court, and I'll go through some of the facts if necessary, that that's exactly what happened here. There was no independent contractor hired to make this move happen. You know, he didn't go out and hire two men in a truck to move his gym across town. Rather, what he did is he self-performed the CrossFit, I should say, self-performed this entire project. Obviously, they went out and borrowed tools, they borrowed equipment, they made the move happen. They recruited an all-volunteer workforce. They didn't pay anybody. They retained the control over the entire project. As I'm going to get to here in a moment, the entire defense argument for CrossFit involves invoking the traditional independent contractor exception to liability. We don't have that here. All right, so let me ask you a point, a question. So was McCabe an invitee of CrossFit? He was an invitee? No, he was a hired worker. He was hired to do work, although not for pay. He was recruited as a volunteer. And the invitee issue, I think, has to do with premises liability law. We're not making a premises liability claim here. We're saying that he was under the control of CrossFit. In fact, all of these volunteer workers were under the control of CrossFit. And if I can give a very, I think, vivid example of what I'm talking about. If CrossFit's volunteers in their own vehicles, which he obtained them to do this move in, if they were driving across town with the gym equipment in their cars and they got into a their master for purposes of assessing liability against CrossFit, I submit that they absolutely would. And that same logic applies to anything that the workers were doing under CrossFit's control and direction. So when Mr. McCabe was up on that ladder, he was subject to the control of CrossFit. They retained it. They never delegated that duty to any independent contractor. Because of that, we think that the entire argument as to CrossFit, which relies on the independent contractor exception, fails. It fails. There was a master-servant relationship as described in Comment A of Section 414. Alternatively, we also believe that the provision of the ladder, the agreement to provide a ladder to Mr. McCabe, to procure it from somewhere, to provide it to him, that that certainly raises a question of material fact for purposes of IPI 55-01 and 02, which describe what retained control amounts to in a jury trial. So we have a question of fact whether the provision of that ladder constituted sufficient control over an aspect of the work, which is what 414 discusses. And to highlight the provision of the ladder, we cited you to a second district case in Zacoskis. I forget the defendant's name at this moment, but Zacoskis was a structural work act case. Not that the case law, not that the subject matter of the case makes any difference, but this court found that the provision of a ladder was a sufficient basis to raise a question of tribal fact over the providers having charge of the work, which is likened to control over work under 414. We're saying the same thing happened here. It provided, the only means that he had to get up on that to that height was the ladder that CrossFit agreed to provide him. He didn't have a ladder himself that would reach there. He wasn't getting paid where he could go out and rent a man lift or a frame ladder to get up to that height. He had to rely on CrossFit providing that. That's why there's retained control under comment C of 414. And then lastly, under the 405 and 408 standards and requirements as an intermediary supplier of a dangerous chattel, CrossFit also had a legal duty of care. And by intermediary, I'm specifically referring to comment C in section 388, which is at the outset of chapter 14, that says it doesn't matter whether you own the ladder or the chattel or not, as CrossFit has argued in its brief, it doesn't matter. They argued that it does matter that you have to own it. That's not right. Even as an intermediary in possession of that chattel, you have essentially the same duties under 405 and 408 that the original provider of that chattel had. And again, let's say your position is correct on that, irrespective of who owns it or who's providing it. Is there any allegation or affidavit in this case that there's any knowledge BAM had any knowledge or reason to know that the ladder was dangerous at all? Is that a consideration or an element here? Yes, it is. You've just recited the 405 elements. And yes, it is. And that's an issue of fact for the charter of fact. Correct. Correct. And whether they had reason to know we have evidence, however, in the record, that would support a jury's finding that they had reason to know, namely how conspicuous these worn out rubber end caps to the ladder work. We've got pictures in the certainly in the record, we've got the testimony of the uncontested affidavit of our expert who says absolutely the not only were they visible, but you could see the aluminum rails pushing through the rubber. And it was conspicuous to anybody who would bother to look. Defense comes back and says, well, plaintiff had an equal equal opportunity. Well, that's a comparative fault argument. Now we're now we're in the jury's purview at that point again. So we have support in the record for have reason to know under section 405. The simple fact is that by taking on the responsibility to provide the ladder or the work support CrossFit retain the requisite control under section 414, comment A or comment C, which are two different standards clearly. And we talked about the 405 in the four way. Let me turn to BAM for a minute. BAM's primary arguments are that 408 only applies to, as the court questioned, leasing companies. Well, there's nothing that literally says that in 408. There's a comment that says that they are peculiarly, peculiarly applicable to leasing companies. And, and, and BAM's brief certainly highlights that. I think that that what that means is that in particular, they certainly apply to leasing companies, peculiarly applicable in particular. However, it does not exclude other possibilities. And in comment B, the illustration B, I'm sorry, they specifically talk about a situation where somebody borrows a car from another individual. There's no there's no reference to that other individual being in the leasing business. So I'm just saying that while the vast majority of cases that 408 is designed to apply to may be leasing companies, it doesn't exclude non-leasing company situations. And the only difference really is the duty to inspect. So under 408, when you know that the crux of it is, you know, that it's going to be put to an immediate use by an unsuspecting user. When you know that there's a duty to inspect it before you supply the channel. We argue that that's what we have here. They knew, BAM knew that these volunteer workers who were untrained, you know, even my client never went to a trade school or a union apprenticeship program or anything like that. They knew that these untrained people were going to be using these ladders, you know, in the course of this work. So they had an obligation to inspect. The affidavit of John Verhalen, our expert also points out to certain obligations to inspect that arise under the ANSI and OSHA standards that he cited. So we think 408 applies to BAM. 405, however, also applies to BAM. And by the fact that council brought it up and we analyzed it in our reply brief, that's not a waiver of anything. In fact, the chapter 14 itself says, in many instances, the rules stated in these sections in this chapter may overlap and the plaintiff may recover under the rules stated in two or more of the sections. And that's included in chapter 14 in the introductory scope note. So what about your spoilation of argument, of evidence argument against BAM? What is that based on? So BAM retained the ladder. It was their ladder. They took it back from the scene of the accident. We went out and asked to inspect it shortly after the incident occurred and we did so. We took photos of it and we thanked BAM's allowing us to do that. Then we brought an expert into the case. And by the way, our notices to him refer to it as indispensable evidence. We also told him that based on our initial examination, that there were flaws and defects in the ladder. So any reasonable person knowing all of that certainly knew that it was pivotal evidence to the case. We brought our expert in to do a scene visit. We requested the ladder to be present and they produced a similar ladder that turned out to be a different ladder. That was about a year and a half. Was it not after you had completed the initial inspection? You had thanked BAM. So why would they have reason to believe they had to keep it on hand a year and a half later when you said you completed your investigation? Well, an investigation doesn't mean that I'm done with my case. Obviously, I have to prove my case to a jury. And the crux of all we're saying in our appeal regarding that is this. The judge predetermined this issue before it should have. It was a premature decision. We won't know if that ladder was crucial to proving our underlying case or not until the same jury tells us, hey, you know what? We found the defendants not guilty here. But if you had the ladder, that would have made a difference. That's when we know if we have a true spoliation count or not. So right now we're just pleading it. And we think it was premature for the judge to interject and weigh the evidence and say, oh, no, this was reasonable on their part. Reasonableness is a question for a jury. And again, it doesn't become an active claim until and unless we lose the case and the jury tells us it was because the evidence was missing. So going back to BAM for a minute. You're muted, Bob. You're muted. Was there a question, Justice McClaren? Your time is up. My time is up. So would you please close? Yeah. Thank you so much. I just want to say with regard to questions of fact for BAM, did BAM have reason to know of the dangerous and deteriorated condition in its ladder? And to that, we would cite the Pagano case itself, which was very, very similar to this case. I mean, it's on all fours with this case as far as really all of the issues relating to BAM. For the foregoing reasons and viewing the facts in this record in the light most favorable to the plaintiff, each of the trial court summary judgment orders in favor of both respective defendants must or should be overturned and expressly reversed. And the clause remanded to the trial court for further proceedings. Thank you so much on behalf of my client for your time today. Thank you. Mr. Reces, you may proceed. Thank you. Good morning and may it please the court and counsel. My name is Mike Reces and I'm here today on behalf of defendant appellee BAM Signs. The trial court was right to reject plaintiff's theory of recovery under section 408. Plaintiff's appeal is premised on a duty to inspect that BAM allegedly had under section 408 and only 408. But comment B to section 408 makes clear that the duty to inspect applies to suppliers who are in the business of leasing to others. BAM had no duty to inspect because BAM is in the sign business, not in the leasing business. Loaning the latter was not lucrative to BAM. Instead, as a lender under section 405, BAM had no duty to inspect before lending the latter. As I think I heard plaintiff's counsel say today, it was reason to know. Reason to know is not the same as a duty to inspect. Plaintiff misreads section 408. The first sentence of comment B states that 408 is, quote, peculiarly applicable to persons who make a business of leasing chattel to others. Now plaintiff is telling you that peculiarly applicable does not limit section 408 to those in the business of leasing to others. But plaintiff's own brief on page 30 also quotes the scope note to their statement as follows. The peculiar rules applicable to donors, lenders, and lessors of chattel are stated in 405 to 408. And he's citing Brobry, or Brobby, B-R-O-B-B-E-Y, 404 LF 3rd at page 431. »» Could I interrupt, please? »» Yes. »» Relative to this particular section, is there a duty to report both latent and patent defects or only one or the other? »» Are you saying, I'm not sure if I understand. »» What I'm getting at is referencing the less or the lease of the tool. Is the duty to have the part of your client to report or identify latent defects or patent defects or both? »» Well, if it is a patent defect, I would say that the, well, if you're talking about a lease. I'm suggesting that the absence of rubber on the bottom is a patent defect as opposed to a latent defect. A latent defect is a micro fracture that causes the ladder to collapse upon the weight or whatever occurs. Something that a person using the ladder wouldn't normally recognize as a dangerous situation. If we were proceeding under 408, where there's a duty to inspect, but you're talking about a defect that is obvious, that is patent, I would say that in that situation, I don't think that there would be a duty to tell the plaintiff because if it's patent, then I think the plaintiff would be in equally the same position as the bailor. This is not a 408 case. Now, under a reason to know standard, under 405, again, I think it's premised on the idea that you have a duty to provide information when you can expect that the other party will not be in a position to ascertain it. If it were a latent defect, but you knew about it, you have to tell the person who's going to use the ladder about it. But if it's a patent defect, I don't believe that there would be any such duty in that circumstance. Or if it was latent and he didn't know about it, he wouldn't have to report it? Unless he should have known about it? I just want to understand, are we talking about 405 or 408? I'm talking about the law of negligence in general. All right. If he knows about it, he should say something if it's latent. And if it's something that is equally obvious to the plaintiff, I don't believe there is that duty. So, Mr. Reese, under 405, are you saying that BAM has no duty to inspect? Correct. Reason to know, this is an important distinction. Reason to know does not mean that you have any duty to ascertain the existence of the fact in question. Reason to know means, and now I'm going to refer to comment B to 388, means that the lender must use reasonable care to give information in the lender's possession. The problem here for the plaintiff is that we did not have reason to know that there was anything wrong with the ladder. Why? Because there was, he's alleging in his brief, Mr. Acosta, that they did no examination prior to giving the ladder to the gym. So, the only way they would have reason to know is if did an examination of it. Not necessarily. There is no duty under 405 to make that examination. If David said to his son, you know what, you can use the ladder, but you're going to have to pay me 50 bucks. That might be different. That might be different. The example that Mr. Acosta cited in 408 about the illustration was actually one where the comment goes on to say that if A will only get the car if B pays for the privilege, that comes within the rule that, yes, it is still an economic transaction, and that's what the duty is based on. Here, there was no economic transaction. If we knew something was wrong, that would be sufficient to give us a duty of care. But there was no evidence that anyone had incident, and David had no reason to know from his own experience that there was anything wrong with the ladder. I see my time is up. I see my time is up, and I know the cue when to exit. So, let me just say in closing, we stand on all of our arguments in our brief, and we ask you to affirm the order, writing summary judgment on counts two and three in its entirety. Thank you for your time this morning. Are there any questions of Mr. Reiss? I have none. Thank you. Ms. Mehta, you may proceed. Good morning, Your Honors. The Council may please support. I will stand the arguments raised by my co-counsel on the issues as to why CrossFit did not owe a duty to Mr. McCabe under sections 388, 405, and 408 of the restatement. A couple of points that are specific to CrossFit is that it is undisputed that CrossFit did not own the ladder in question. It is also undisputed that it was not in the business of actually leasing any equipment. And in regards to a couple of points that Mr. Acosta raised in his initial arguments, which was that 405 and 388 are irrespective of who owns it, and whether reason or no is an issue of fact for the trier of fact, you can have an issue of fact when there are actual facts regarding a specific party's association or observations of the ladder. And here, there are none. So for those reasons, we would ask to affirm summary judgment on that basis. Moving on to section 4114, which is the other argument that plaintiff raises in regards to how CrossFit owed him a duty. Starting off with 4114 does not apply here. There's references to Code of Federal Regulations, but the argument is utterly devoid of any kind of legal authority that would allow this type of claim to be raised in this situation or their relation between CrossFit and plaintiff falls within the parameters of section 414. The facts that are ignored here are that plaintiff reached out to the owner of CrossFit, Andrew Pollack, to ask how he could help out with the move, in response to which Pollack asked him to remove the flags. There is no evidence that anyone hired plaintiff to do anything. In fact, plaintiff himself admitted that he helped in the CrossFit move as a favor to his friend Pollack. Plaintiff claims that this is construction work for why 414 would apply, because there are modifications to the premises by removing the screws. Under that logic, something as basic as tightening a light bulb or screwing a loose doorknob all count as modifications, and that would then be considered construction work. There is no precedent. Isn't it a little different here? You have kind of a dangerous condition with the length, the height of that ladder, and the fact that your client took the rubber matting off the floor before he sent the plaintiff up to take those flags down. So it's a little different than tightening a light bulb or doing something that's a little less dangerous than what was asked to be done here. Your Honor, respectfully, the issue over here that the entire brief is focused on are the ladder legs. The rubberized mat, I think that's a red herring. But even if Your Honor would consider this to be construction work, 414 could potentially apply. The facts show that there is still no evidence of retained control. First, I would like to direct Your Honors to the Zokoskis case, which counsel referenced in his argument. One thing is, in that case, the court did consider the provision of a ladder in blatant retained control, but that was just one of the many factors. That court considered 10 separate factors, which is regarding whether defendant controlled and supervised the work, retained the right to supervise and control the work, constantly participated in the activities that were at issue, supervision and coordination of the subcontractors, acceptance of responsibility for safety precautions, authority to issue change orders, authority to stop work, owning the equipment in the job site, familiarity with the construction customs and practices, and in a position to assure worker safety. Here, there is no dispute that CrossFit did not supervise or retain the right to supervise. Plaintiff himself admits that CrossFit did not provide supervision to his work, he did not coordinate with anyone from CrossFit, and he did not look to them for direction. Rather, when he himself had done part of the flag rule earlier in the week, he's the one who determined how to do it, how to set up the ladder, and what tools to use while he directed Andrew Pollack, the owner of CrossFit, and what assistance he could potentially provide. Nobody from CrossFit was on the premises. Both Plaintiff and Pollack agree that Plaintiff is better at this type of work. So the reference, just because a ladder was provided, that goes against ample established Illinois law that shows that a provision of one piece is not sufficient to constantly retain control. Similarly, there's no evidence that anyone from CrossFit was familiar with construction customs and practices. Pollack was asked a specific question regarding, does he know what general contractor or subcontractor terms means? He says he knows what they are, but does not actually know what they mean or what they do. So here... Could I interrupt and ask a question or two, please? Of course, your honor. Who told the plaintiff to do anything or everything on premises? Andrew Pollack asked him to remove the flags, your honor. Yes. Okay, and pursuant to that request, did he do so, or at least attempt to do so? Yes, your honor. And did Andrew Pollack obtain a ladder and provide it for the plaintiff to remove the flags? Yes, your honor. He borrowed the ladder from his father, which is Bam's owner. If he provided a ladder that was defective, would that not be negligent, or at least arguably so? No, your honor, because if you're looking at section 414, and you're looking at the case law that has interpreted 414, right? There are several courts that have considered contractors. General contractors would typically provide direction to subcontractors. They would tell them what the scope of their work is, but provide some direction on potentially how to do it. Was there any consideration given to the plaintiff for removing the flags? No, your honor. It was described as a favor. Then how is it that he's an independent or subcontractor? Your honor, they argue 414. They have argued for the CrossFit odor duty under 414, and they argue both direct negligence and retained control as an exception. They never argued a common count of negligence? No, your honor. It's just construction negligence if the allegations are looked at. But even if your honor were to consider direct negligence, then there's... Count one. What did they allege in count one? Count one is the only count alleged against CrossFit, your honor, where they talk about allegations regarding... We're not claiming that this was an official general contractor subcontractor relationship. We're saying that 414 doesn't even apply. But even if you're looking at direct negligence, which counsel touched on in his argument, is that in all the cases that look at direct negligence under 414 outside of retained control exception, there still must be actual knowledge of hazardous work conditions. It's not a should know. It's an actual notice requirement. And without that, there cannot be direct negligence. Here, there is no evidence that CrossFit knew of any issues with the ladder, knew how plaintiff set up the ladder, knew how plaintiff was using the ladder, or the exact process that he followed to complete the flag removal. So there is no actual knowledge. And in regards to your honor's questions, there can't be direct negligence without that. So there's no duty to inspect what the defendant, CrossFit, gave to the plaintiff to achieve or complete the request made by Mr. Pollack. So your honor, I think that probably go back to section 408 of the restatement, which is the duty to inspect. And I think as that applies for someone who's in the business of leasing chattels, that would not apply. If your honor were to look at a duty to warrant situation, which are the other two sections. How many claims were raised in the one count? It's just allegations. I can read them out to you if you'd like. No, my point is, is that it would appear that maybe the complaint has multiple allegations of neglect. We're talking about at least two sections of the restatement, are we not, or two paragraphs? If they aren't identical, and if they don't cover the same issues, then should those have been in separate counts? Arguably yes, your honor. One point, I don't think it really makes much of a difference for the purposes of this appeal, is that 408 was only raised for the first time, really in response to the party's motion for summary judgment. So whether it's specifically identified or not, that is a matter of the pleading, but regardless of which section the restatement is considered, there was no duty in CrossFit to inspect this under 408. There is no duty in CrossFit to warrant of any known dangers under 405 or 388. There's a focus on the... Is there any common law duty to inspect or provide safe tools to people who are working under your supervision? Your honor, they were not under his supervision. Plaintiff's own testimony demonstrates that. No, plaintiff's statement might constitute an admission, if in fact it was factually correct. The fact that he, out of ignorance, said that he wasn't being supervised doesn't change the fact that Mr. Pollack told him what he wanted him to do. If Mr. Pollack had told him to go climb the ladder, and he decided to go and move a weight machine, and he dropped a weight on his foot and crushed it, I might buy your argument that he was a volunteer and he was not under the supervision of the defendant, but he did what the defendant told him to do. How could he not be under his supervision to the extent that he's complying with a request? Because, your honor, if you look, supervision is... I think there are different connotations to it. Supervision in the context of, you know, asking when someone asks you to do something is different. Your honor, I see my time is up. Can I finish answering my question? Any other questions? She's asking if they should answer her question. Can I finish answering my question, your honor? Pardon? I see my time is up. Could I finish answering my question? Answering what question? The last question that I was answering, your honor. I thought you did. I was in the middle of a statement. So, your honor, what I was just saying is I think supervision is a different connotation, whether you're looking at a general term or for the purpose of a legal duty under what is alleged against CrossFit. So, we ask that you affirm this trial court's decision. Thank you. Thank you, Mr. Hudson. Justice Hudson, would you ask your question? Nothing further. I have no further questions. Thank you. Mr. Acosta, you have an opportunity to make rebuttal. You're off. You're turned off. Thank you very much. I apologize for that. Yeah. So, briefly in reply and rebuttal, I'd like to address first CrossFit's response. I think some of the questions that were asked were vitally important to understand the relationship between Mr. McCabe and CrossFit. And I want to really highlight this issue on page 28 of CrossFit's brief because I think it is very instructive in telling us what was really going on here. At page 28 of CrossFit's brief, they said that if the plaintiff was dissatisfied with the ladder that CrossFit had provided, his option was to troubleshoot that issue with the owner of CrossFit. Now, that admission really covers this relationship because it establishes who was at the top of the totem pole in terms of the work that Mr. McCabe was asked to do. It was CrossFit. They say that he could have troubleshot or troubleshooted, I think is the word that they use, but he could have gone and tried to solve that problem. Now, a truly independent contractor would have his own, first of all, his own equipment. He could have gone out and rented a man lift, etc. No, they admit that he needed to go and talk to the owner of CrossFit to solve that problem. What's your response to her claim that your client committed an admission or made an admission relative to non-supervision? Well, direct supervision at the time of the incident itself, there really isn't a question of fact that Mr. Pollack, the owner of CrossFit, wasn't present, but he certainly had a right to supervise. If you look carefully at the deposition testimony, all the witnesses were asked who had a right to stop work, supervise, etc. They all essentially concluded that, yes, Mr. Pollack had retained those rights, whether he was exercising them or not. You didn't answer my question. I said, what's your response to her statement that your client committed or made an admission about supervision? Well, my response would be, even if he did say that, it's not determinative of the issue. As she pointed out, there's a whole host of considerations to figure out whether somebody has retained control. You're talking about the difference between direct supervision and supervision? And retained right to supervise, which is what the rule talks about, not performing it at the moment of the incident itself. Council for CrossFit also repeatedly brings in the general contractor, contractor model and construction. Look at the terms, look at the verbiage used in 414. There's no references to general contractors and contractors. There's no direct construction references whatsoever. Now, I know that CrossFit's council focuses on construction line. To an extent, this does touch upon construction work as defined under OSHA. However, that's not a requirement here under 414. And if you look at the IPI instructions, it makes it clear they could be a contractor, they could be an owner, they could be another party. So 414 is not exclusive to the formal large construction company contractor with a subcontractor. That's a red to Bam's response for a moment and focus on the Pagano case because the Pagano case is so on par with this case that it's incredible. The issue is a defective dolly. And the only evidence that reversed the summary judgment was the plaintiff's testimony that it looked old and owner of the dolly that they should have known or they had reason to know that it could have been defective. So we have much more than that. We have conspicuous deterioration of these latter feet. And please don't muddle as I think council did for Bam, the issue of open and obvious with whether a defendant has a duty or not. The trial court ultimately rejected that on our motion for use that as a basis for summary judgment. And then on reconsideration, the court rightfully said no, that's a separate issue. It's compared to fault of the plaintiff as to whether he should have seen it or not. That's not that does not bear on the defendants initial duty of care as owed to the plaintiff. So again, we would argue that under 405, constructive notice 408, duty to inspect either or alternatively as to Bam. With regard to CrossFit, both of those sections as well as comment A to section 414 and comment C to section 414, all of those create legal duties of care owed by these defendants, arguably creating questions of fact that a jury needs to try. Lastly, on the spoliation, again, the trial court was premature in deciding that Bam acted reasonably. Yes, there's evidence that he could say gave him reason. And yes, there's evidence that says that he should have known and preserved it. That's a traditional question of fact for a jury to decide. For all of those reasons, we would ask this court respectfully to reverse all of the trial court's rulings, finding a lack of duty and entering summary judgment as to both defendants as well as to the spoliation count. We thank you very much for your time today. Thank you. Are there any other questions? I have none. None. I don't either. Thank you, everyone for the presentation. And thank you for complying with our order relating to short notice on Zoom. Thank you. Mr. Marshall, will you close out the proceedings? Yes, Your Honor.